**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELINDA TURNER, | : | CIVIL NO.: 1:25-cv-00570 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

In this social security action, Plaintiff Melinda Turner seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, we

---

[1] Frank Bisignano is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9 -1* to 9-8.[2]  In February 2022, Turner filed an application for disability insurance benefits and an application for supplemental security income, alleging that she has been disabled since February 10, 2020. *See Admin. Tr.* at 216–223.  After the Commissioner denied her claims at the initial and reconsideration levels of administrative review, *id*. at 64–111, Turner requested an administrative hearing, *id*. at 145.  On November 9, 2023, Turner—who was represented by counsel—as well as a vocational expert testified at a hearing before Administrative Law Judge Michelle Wolfe (the "ALJ"). *Id*. at 38–63.  On March 27, 2024, the ALJ denied Turner's claims for benefits. *Id*. at 14–37.  Turner appealed the ALJ's decision to the Appeals Council, which denied her request for review. *Id*. at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

_____

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Turner's claims.

In March 2025, Turner began this action by filing a complaint seeking review of the Commissioner's decision denying her claims. *See Doc. 1.* She requests, among other things, that the court reverse and set aside the Commissioner's decision, or, in the alternative, remand the case for a new hearing. *Id.* at 1–2 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7.* The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8, 9.* The parties filed briefs, *see docs. 10, 12, 13*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means—

3

and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Turner is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[3]  Unlike with disability insurance benefits under Title II of the Social Security Act,

---

[3] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Turner met the insured-status requirements through December 31, 2025. *Admin. Tr.* at 18, 20.

"[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20

6

C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ

considers all the claimant's medically determinable impairments, including any

non-severe impairment identified by the ALJ at step two of his or her analysis. 20

C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the

sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner,

who must . . . show there are other jobs existing in significant numbers in the

national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional

capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive

requisites.  Most significantly, the ALJ must provide "a clear and satisfactory

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642

F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The

"ALJ may not reject pertinent or probative evidence without explanation." *Johnson*

*v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On March 27, 2024, the ALJ denied Turner's claims for benefits. *Admin. Tr.* at 14–37.  She proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Turner had not engaged in substantial gainful activity since her alleged onset date of February 10, 2020. *Id.* at 20.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Turner had the following severe impairments: "left elbow epicondylitis, left proximal biceps tendinosis, status post left shoulder arthroscopy, debridement of the subacromial bursectomy and partial thickness rotator cuff tear, status post-left knee arthroscopy, partial medial meniscectomy and synovectomy, osteoarthritis of the hands with bilateral trigger thumbs, major depressive disorder, adjustment disorder, generalized anxiety disorder, and post-traumatic stress disorder." *Id*. at

20.[4]  The ALJ also found that Turner had numerous non-severe impairments. *Id.*
And the ALJ noted that Turner's medical records mention other complaints, but
she concluded that the medical evidence does not establish a medically
determinable impairment regarding those. *Id.* at 20–21.

## C.  Step Three.

At step three of the sequential-evaluation process, the ALJ found that Turner
did not have an impairment or combination of impairments that met or medically
equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at
21–22.  Specifically, the ALJ considered Listings 1.16 and 1.18 in connection with
her physical impairments. *Id.* at 21.  And in connection with Turner's mental
impairments, the ALJ considered Listings 12.04, 12.06, and 12.15. *Id.*[5]

---

[4] For readability purposes, here—and elsewhere—when citing or quoting the
ALJ's decision, we omit the ALJ's citations to regulations as well as citations to
the record.

[5] Because Turner's claims in this case concern her physical impairments, we
do not go into detail regarding the ALJ's discussion of Turner's mental
impairments or her limitations arising from those mental impairments.  This is
consistent with Turner's approach in her briefing of focusing on her physical
impairments and limitations. *See doc. 10* at 3 (stating that although it is the
combination of the physical and mental impairments found by the ALJ to be severe
that renders her disabled, "for the purposes of the arguments below, we focus on
the physical impairments/limitations").

### D.  The RFC.

The ALJ then determined that Turner has the RFC to do light work with some limitations. *Id*. at 22–23.  The ALJ determined that Turner has postural, environmental, and other limitations. *Id*. at 23.  As relevant here, the ALJ determined that Turner can only occasionally reach overhead with her left upper extremity. *Id*.  And she determined that Turner "should have the option to transfer from sitting to standing in intervals up to one hour, but [she] will not be off task when transferring." *Id*.

In making this RFC assessment, the ALJ considered Turner's testimony and assertions regarding her limitations. *Id*. at 23–24.  The ALJ concluded that although Turner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not generally consistent with the evidence." *Id*. at 24.  And she explained the factors she used in making that determination and the reasons for that determination. *Id*. at 24–25, 28.

The ALJ also considered Turner's medical records and the reports of consultative examiners. *Id*. at 25–28.  And she considered the opinions in the record. *Id*. at 28–30.

As relevant here, the ALJ considered the opinion of the medical consultant—Ms. Cywinski—who opined, among other things, that Turner "could

sit for eight hours and stand for 20 minutes at a time and walk for 15 minutes at a time." *Id*. at 29.  But the ALJ found Cywinski's opinion "unpersuasive overall" because Cywinski's findings regarding the weight that Turner can lift and the amount of time she can stand and walk "are inconsistent with the record and with [Turner]'s own statements that she walks her dog and can stand for 20-30 minutes and walk a block"; "her limitations are not fully supported by the record which shows generally normal gait"; and "[h]er examination was conducted one month after [Turner]'s knee surgery, therefore, [Turner] could have been temporarily more limited in her ability to walk and stand." *Id*.

The ALJ also considered, and found persuasive, the opinions of the two state-agency medical consultants—Dr. Baublitz-Brenenborg and Dr. Sasnauskas—who opined the Turner could perform light work with some additional limitations, including only occasionally reaching with her left upper extremity. *Id*. at 29–30.[6] And the ALJ explained why she found their opinions persuasive:

> Their opinions are persuasive as they are consistent with the evidence documenting tenderness on palpation of the hands and some reduced range of motion of the shoulder, reduced grip strength and decreased range of motion in the left knee.  Based on these findings and the totality of the evidence the undersigned finds [Turner] can perform occasional postural activities, frequent fine and gross manipulation bilaterally, and

---

[6] Dr. Baublitz-Brenenborg and Dr. Sasnauskas also each opine that Turner can "[s]tand and/or walk (with normal breaks) for a total of:  **About 6 hours in an 8 hour workday**" and she can "[s]it (with normal breaks) for a total of: **About 6 hours in an 8 hour workday**." *Admin. Tr.* at 71, 81, 93, 105 (bold in original).

has a sit/stand option. Their opinions are supported by the findings of the consultative examiner and objective findings in the record, particularly the findings of reduced grip strength in the right hand, decreased range of motion in the left knee, and imaging documenting moderate joint osteoarthritis on the right and advanced osteoarthritis on the left, however [Turner] continued to have mostly normal gait, no atrophy, able to pinch and grasp despite the decrease in right grip, and intact sensory.

*Id*. at 29–30.

### E.  Step Four.

At step four of the sequential-evaluation process, the ALJ found that Turner could not perform her past relevant work as a warehouse worker or as a user-support analyst as generally performed. *Id*. at 30.

### F.  Step Five.

At step five of the sequential-evaluation process, considering Turner's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as laundry folder, laundry sorter, and garment bagger—that exist in significant numbers in the national economy that Turner could perform. *Id*. at 31.

In sum, the ALJ concluded that Turner was not disabled from February 10, 2020 (which is the alleged onset date), through that date of the ALJ's decision on March 27, 2024. *Id*. at 31–32. Thus, she denied Turner's claims for benefits. *Id*.

## V.  Discussion.

Turner presents two claims.  First, she contends that the ALJ's finding at step five is not supported by substantial evidence because the ALJ failed to identify and resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. *Doc. 10* at 9–15.  Second, she contends that "[i]nadequacies in the ALJ's function-by-function assessment, and evaluation of the medical opinion evidence frustrate meaningful judicial review." *Id*. at 15–23.  Addressing each contention in turn, we conclude that Turner's claims are without merit.

### A.  The ALJ did not fail to identify and resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles.

Turner contends that the ALJ's finding at step five is not supported by substantial evidence because the ALJ failed to identify and resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles concerning her overhead-reaching limitation. *Doc. 10* at 9–15. Recall, the ALJ determined in the RFC that Turner can only "occasionally reach overhead with the left upper extremity." *Admin. Tr.* at 23.  And in response to a hypothetical that contained that limitation, the VE identified three jobs that an individual who could perform light work with such a limitation could perform. *Id.*

at 56–59.  But, as the parties agree, the three occupations that the ALJ determined, based on the testimony of the VE, that Turner can perform all require frequent reaching.  According to Turner, there is a conflict between the VE's testimony and the Dictionary of Occupational Titles that the ALJ failed to resolve.  Thus, Turner contends that the ALJ's step five finding is not supported by substantial evidence.

Contending that the ALJ had a duty to explain and resolve an apparent conflict, Turner cites, SSR 00-4p.  SSR 00-04p provides "that before relying on VE [Vocational Expert] or VS [Vocational Specialist] evidence to support a disability determination or decision," an ALJ "must[] [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)," and explain "how any conflict that has been identified was resolved." Soc. Sec. Ruling 00-4p, *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704 at *1 (S.S.A. Dec. 4, 2000).[7]  More specifically, SSR-00-04p provides, in pertinent part:

---

[7] SSR 00-4p was rescinded by SSR 24-3p. *See* Social Security Ruling, SSR 24-3p; Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and

> Occupational evidence provided by a VE or VS generally
> should be consistent with the occupational information supplied
> by the DOT.  When there is an apparent unresolved conflict
> between VE or VS evidence and the DOT, the adjudicator must
> elicit a reasonable explanation for the conflict before relying on
> the VE or VS evidence to support a determination or decision
> about whether the claimant is disabled.  At the hearings level,
> as part of the adjudicator's duty to fully develop the record, the
> adjudicator will inquire, on the record, as to whether or not
> there is such consistency.

*Id*. at *2.  SSR 00-4p continues that "[n]either the DOT nor the VE or VS evidence

automatically 'trumps' when there is a conflict." *Id*.  Rather, "[t]he adjudicator

must resolve the conflict by determining if the explanation given by the VE or VS

is reasonable and provides a basis for relying on the VE or VS testimony rather

than on the DOT information." *Id*.  And regarding reasonable explanations for

conflicts or apparent conflicts, SSR 00-4p provides that "[e]vidence from VEs or

VSs can include information not listed in the DOT." *Id*.  It acknowledges that:

> The DOT contains information about most, but not all,
> occupations.  The DOT's occupational definitions are the result

---

Decisions, 89 FR 97158-01, 2024 WL 4988840 (S.S.A. Dec. 6, 2024).  SSR 24-3p
became effective on January 6, 2025. *Id*. at *97158.  The Social Security
Administration notes that it will use SSR 24-3p beginning on January 6, 2025, and
it will apply it to new applications filed on or after that date and to claims that are
pending on or after that date, but it "expect[s] that Federal courts will review [its]
final decisions using the rules that were in effect at the time [it] issued the
decisions." *Id*. at *97159 n.1.  Because the ALJ's decision is the final decision of
the Commissioner in this case, and because the ALJ issued her decision on March
27, 2024, before the effective date of SSR 24-3p, we will apply SSR 00-4p.  We
note that neither the plaintiff nor the defendant mention SSR 24-3p.  Rather, each
refers to SSR 00-4p in their briefs.

of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

*Id*. at *2-3.

Further, The Third Circuit has observed that "[b]y its terms, SSR 00–4p, 2000 WL 1898704 (S.S.A. Dec. 4) was designed to address the already-well-established (in this Circuit and elsewhere) obligation of an ALJ to develop the record during an adjudicative hearing." *Rutherford v. Barnhart*, 399 F.3d 546, 556 (3d Cir. 2005). The Third Circuit has stated that "[a]s a general rule, occupational evidence provided by a VE should be consistent with the occupational evidence presented in the DOT." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citing SSR 00-4p, 2000 WL 1898704 at *2). And "[t]o ensure consistency, courts have imposed an obligation on ALJs to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT].'" *Id.* (citing SSR 00-4p, 2000 WL 1898704 at *1; and

*Rutherford,* 399 F.3d at 556). "Specifically, an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Id.* (quoting *Burns v. Barnhart,* 312 F.3d 113, 127 (3d Cir.2002)). "An ALJ's failure to comply with these requirements may warrant remand in a particular case." *Id.* But the Third Circuit "has emphasized that the presence of inconsistencies does not *mandate* remand, so long as 'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (quoting *Rutherford*, 399 F.3d at 557).

Here, the purported conflict involves reaching. The SCO defines reaching as "[e]xtending hand(s) and arm(s) in any direction." Appendix C, Physical Demands, SCODICOT (available at https://www.westlaw.com/Browse/Home/ SecondarySources/LaborEmploymentSecondarySources/LaborEmploymentTexts Treatises/SelectedCharacteristicsofOccupationsDefinedintheRevisedDictionaryof OccupationalTitles?transitionType=Default&contextData=(sc.Default)&VR=3.0& RS=cblt1.0 (last visited Feb. 15, 2026)). According to Turner, because "[t]his definition does not distinguish between overhead reaching and reaching in other directions," and "[n]either the DOT nor the SCO address overhead reaching specifically," the VE's testimony that someone with her RFC, which includes only occasional overhead reaching with the left upper extremity, conflicts with the

17

DOT's requirement of frequently reaching for the jobs identified by the VE. *Doc. 10* at 10. The Commissioner responds that there are several types of reaching, including reaching overhead, reaching in front, and reaching greater than shoulder height; that because the DOT does not delineate between overhead reaching and other types of reaching, there was no conflict here to resolve; the ALJ asked about conflicts with the DOT; and she was entitled to rely on the VE's testimony. *Doc. 12* at 9–13.

"[S]everal circuits have held that limitations precluding overhead reaching can create apparent conflicts with DOT job descriptions that list 'frequent' reaching[.]" *Ayesha L. v. Dudek*, No. CV 24-04410 (JXN), 2025 WL 3079291, at *8 (D.N.J. Nov. 4, 2025) (citing *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015); *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014); and *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87 (2d Cir. 2019)). But the parties have not cited to a Third Circuit decision so holding, and we are not aware of such a decision. Further, district Courts in this Circuit have reached seemingly discordant answers to the question whether when the ALJ determines that the claimant is limited regarding overhead reaching, but the VE identifies jobs requiring frequent reaching there is a conflict or an apparent conflict between the VE's testimony and the DOT that the ALJ is required to resolve. *Compare Borys v. Bisignano*, No. 3:23-CV-1041, 2025 WL 2814539, at *12 (M.D. Pa. Sept. 30, 2025) (reasoning that "the ALJ need not

'inquire into conflicts' if 'the DOT and testimony of the vocational expert [are] not necessary inconsistent," that "[a] corollary is that no reversible error exists if [the] DOT lacks discussions of a certain limitation in its job description, and thus does not contradict an expert's testimony" and because "neither [the] DOT nor its companion text distinguish between types of reaching or address overhead reaching specifically," there is not necessarily a contradiction between the VE's testimony that a claimant limited to only occasionally reaching overhead can perform jobs that according to the DOT require frequent reaching); *David C. v. O'Malley*, No. 4:23-CV-0488, 2024 WL 1356719, at *5 (M.D. Pa. Mar. 29, 2024) (rejecting claimant's argument that the ALJ's reliance on VE testimony was not supported by substantial evidence "because the RFC limits him to occasional overhead reaching, but the one job identified at step five requires frequent reaching" and concluding that given that the DOT is silent on overhead reaching, there was no conflict); *Tammero v. Saul*, No. 3:19-CV-02234, 2020 WL 7480661, at *9 (M.D. Pa. Dec. 18, 2020) (concluding that "when an ALJ relies on a VE's expertise concerning specific limitations to which the DOT is silent, a conflict does not exist"); *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 460 (D.N.J. 2016) (agreeing "with the Commissioner that 'because the DOT is silent with regard to overhead reaching, the [vocational expert's] testimony concerning a person with a limitation to overhead reaching does not create a conflict with the

19

DOT" but reversing and remanding for other reasons), *with e.g.*, *Wise v. Astrue*, No. 4:11-CV-01253, 2012 WL 4484944, at *3 (M.D. Pa. Sept. 27, 2012) (reversing and remanding where the ALJ failed to obtain an explanation from the VE regarding an apparent conflict between the VE's testimony that the claimant could do jobs that required occasional reaching in response to a hypothetical question that included a prohibition on any overhead reaching); *Fariss v. Berryhill*, Civil Action No. 3: 17-cv-01741, at *doc. 14*-slip report and recommendation (M.D. Pa. Apr. 17, 2019) (concluding that there is an apparent conflict between the VE's testimony that someone with the claimant's RFC could do jobs that, according to the DOT require constant or frequent reaching, where the ALJ limited the claimant to no more than occasional overhead reaching and concluding that because the ALJ did not resolve that conflict, his decision was not supported by substantial evidence), *report and recommendation adopted*,  2019 U.S. Dist. LEXIS 77028 (M.D. Pa. May 7, 2019).

Whether there is an apparent conflict or not, the results of the cases raising this issue often turn on whether the issue was addressed by the VE and the ALJ. *See Ayesha L.*, 2025 WL 3079291, at *8 (reasoning that those cases holding that there is a conflict "are distinguishable where, as here, the VE provided an on-the-record, experience-based explanation that the particular jobs at issue do not require overhead reaching and the ALJ expressly credited that explanation" and

20

concluding that because those were the circumstances in that case, no conflict

existed); *Marrero v. Bisignano*, No. 1:24-CV-1772, 2025 WL 2415753, at *7

(M.D. Pa. Aug. 20, 2025) (concluding that the ALJ appropriately resolved the

conflict where the "VE testified that while the DOT did not differentiate between

directional reaching or reaching with left of right extremities, based on his

experience observing and talking to employers, those jobs [that he had identified],

do not require overhead reaching" and "[c]ontrary to the plaintiff's assertion that

the ALJ was not entitled to rely on this explanation, SSR 00-04p explains that

'[r]easonable explanations for such conflicts . . . include . . . a VE's or VS's

experience in job placement or career counseling'" (internal citations omitted)); *Cf*

*Borys*, 2025 WL 2814539, at *13 (finding that there was no conflict but concluding

that to the extent there was a conflict, the ALJ's finding at step five was supported

by substantial evidence where the ALJ asked whether the VE's testimony was

consistent with the DOT and its related publications, the VE stated that her opinion

regarding overhead reaching, among other things, was "based upon evaluating

representative examples such as the ones [she] provided [that day] within the

economy," and the ALJ concluded that any divergency from the DOT was based

upon the VE's knowledge and experience in the field).

Here, even assuming for the sake of argument that there was an apparent

conflict between the VE's testimony and the DOT, remand is not warranted in this

case because the ALJ adequately addressed the issue.  At the end of the vocational

expert's testimony, the following exchange occurred between the ALJ and the VE:

> ALJ:  And is your testimony consistent with the DOT
> except related, except those issues not considered or
> contemplated?
>
> VE:  That is correct.  No inconsistencies  I'll brief my list
> of items not addressed by those documents ramps, unilateral
> versus bilateral requirements, they do not separately identify
> reaching overhead or other reaching, do not address the use of
> foot controls, alternating position, or interactions, or finally
> work place behaviors like off-task.
>
> Therefore, on subjects such as these I rely on my
> knowledge and experience in the field to offer my opinions.
>
> ALJ:  All right.  Thank you.  . . .

*Admin. Tr.* at 62.  And, in her decision, the ALJ states that "[t]o determine the

extent to which [Turner's] limitations erode the unskilled light occupational base,

[she] asked the vocational expert whether jobs exist in the national economy for an

individual with [Turner's] age, education, work experience, and residual functional

capacity[,]" and the VE testified to the jobs that were available. *Id*. at 31.  The ALJ

further acknowledged that she relied on the VE's education, professional training,

and experience to determine the impact of limitations not addressed in the DOT:

> Pursuant to SSR 00-4p, the undersigned has determined that the
> vocational expert's testimony is consistent with the information
> contained in the Dictionary of Occupational Titles, except that
> the vocational expert relied on his education, professional
> training, and experience to determine the impact of limitations
> not addressed in the DOT, such as the change of position from

> sitting to standing, and the frequency of interacting with others including supervisors, co-workers, and the public.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering [Turner's] age, education, work experience, and residual functional capacity, [Turner] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

*Id.* at 31.

In sum, the ALJ asked about conflicts with the DOT; the VE testified there were no conflicts, but the VE nevertheless explained that the DOT does not, among other things, "separately identify reaching overhead or other reaching," and that he relied on his knowledge and experience in the field to offer his opinions on the matters; and the ALJ relied on the VE's knowledge and experience in accepting the VE's testimony. More is not required.

In sum, we reject Turner's contention that the ALJ's finding at step five is not supported by substantial evidence because the ALJ failed to identify and resolve an apparent conflict between the vocational expert's testimony and the DOT.

### B. The ALJ's RFC assessment was not inadequate, and her evaluation of the evidence did not frustrate meaningful judicial review.

Turner asserts that "the ALJ failed to assess [her] standing/walking limitations as required by SSR 96-8p despite all medical opinions of record

proving for such limitations and despite the ALJ finding these opinions to be persuasive." *Doc. 10* at 1.  She contends that the ALJ's purported failure in this regard frustrates meaningful judicial review and requires remand. *Id*. at 15-23.[8] We disagree.

Turner points out that there are three medical opinions in the record regarding her ability to stand and walk, and all three agree that she has at least some limitations.  As noted above, Dr. Baublitz-Brenenborg and Dr. Sasnauskas each opined that Turner can "[s]tand and/or walk (with normal breaks) for a total of:  **About 6 hours in an 8 hour workday.**" *Admin. Tr.* at 71, 81, 93, 105 (bold in original).  And Ms. Cywinski opined that Turner "could . . . stand for 20 minutes at a time and walk for 15 minutes at a time." *Id*. at 29.  Turner asserts that despite these opinions regarding limitations on her ability to stand and walk, the ALJ failed to include any limitations regarding standing or walking in her RFC.

---

[8] Turner's argument focuses on the ALJ's handling of her limitations regarding standing and walking. *Doc. 10* at 1, 16, 18, 19, 20, 21, 22, 23; *Doc. 13* at 4–8.  At times, in making her argument, she mentions sitting along with standing and walking. *Doc. 10* at 15, 16, 18, 23.  And she contends that "[i]t is not enough that the ALJ found [that she must] 'have the option to transfer from sitting to standing in intervals up to one hour' since the ALJ failed to discuss or consider her ability to stand, and walk cumulatively in an 8-hour workday." *Doc. 10* at 18.  But Turner does not argue that the ALJ erred by including such a sit/stand option in the RFC.  Thus, we do not address that issue, and our discussion focuses on the RFC as it pertains to standing and walking.

The ALJ determined that Turner has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with some limitations. *Admin. Tr.* at 22–23. The regulations cited by the ALJ provide:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b). Given that the regulations define light work as requiring "a good deal of walking or standing" and frequent—meaning "from one-third to two-thirds of the time"—lifting or carrying, which "requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Soc. Sec. Ruling 83-10, *Titles II and XVI: Determining Capability to do Other Work—the Medical-Vocational Rules of Appendix 2,* 1983 WL 31251, at *5–6 (S.S.A. 1983).

Contending that the ALJ's RFC assessment was flawed because she did not conduct a function-by-function analysis of her ability to stand and walk, Turner cites to SSR 96-8p, which provides that "[t]he RFC assessment must first identify

the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[,]" and "[o]nly after that may [the] RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Soc. Sec. Ruling 96-8p, *Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 at *1 (S.S.A. July 2, 1996).  And in a section titled "Exertional capacity," it continues:

> Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull").  Although the regulations describing the exertional levels of work and the *Dictionary of Occupational Titles* and its related volumes pair some functions, it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately.

*Id*. at *5.

Here, the ALJ did not explicitly set forth a function-by-function assessment regarding Turner's ability to stand and walk in her decision.  "But an omission of the function-by-function assessment does not, on its own, force remand." *Marrero*, 2025 WL 2415753, at *6.  "Although a function-by-function analysis is desirable, SSR 96-8p . . . does not require ALJs to produce such a detailed statement in

writing." *Bencivengo v. Comm'r of Soc. Sec.*, 252 F.3d 153 (table), opinion

available at 2000 U.S. App. LEXIS 38785, *5 (3d Cir. Dec. 19, 2000). Instead,

SSR 96-8p contains "a section entitled 'Narrative Discussion Requirements' which

describes more fully what an ALJ must articulate regarding a claimant's RFC[.]"

*Id*. That section provides, in pertinent part:

> The RFC assessment must include a narrative discussion
> describing how the evidence supports each conclusion, citing
> specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations). In
> assessing RFC, the adjudicator must discuss the individual's
> ability to perform sustained work activities in an ordinary work
> setting on a regular and continuing basis (i.e., 8 hours a day, for
> 5 days a week, or an equivalent work schedule), and describe
> the maximum amount of each work-related activity the
> individual can perform based on the evidence available in the
> case record. The adjudicator must also explain how any
> material inconsistencies or ambiguities in the evidence in the
> case record were considered and resolved.

SSR 96-8p, 1996 WL 374184 at *7 (footnote omitted). "This language does not

command ALJs to make specific, written findings on dozens of individual work

function categories." *Bencivengo*, 2000 U.S. App. LEXIS 38785, *6. Rather,

"[t]he different sections of the Ruling correspond to a distinction between what

must be *considered* and what must be *discussed.*" *Id.* (italics in original). And

"[i]n his or her written opinion, the ALJ need only articulate how the evidence in

the record supports the RFC determination, discuss the claimant's ability to

perform sustained work-related activities, and explain the resolution of any

inconsistencies in the record." *Id*.  Thus, "[a]n ALJ's failure to conduct a function-by-function assessment does not require remand where the ALJ's decision is otherwise supported by substantial evidence." *Barbour v. Kijakazi*, No. 4:20-CV-0861, 2021 WL 4478332, at *5 (M.D. Pa. Sept. 30, 2021).

In setting the RFC, the ALJ must clearly articulate his or her reasoning.  In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although the ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests[,]" *Cotter*, 642 F.2d at 704, an ALJ need not "use particular language or adhere to a particular format in conducting his analysis[.]" *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  And "well-articulated residual functional capacity assessments supported by substantial evidence are permitted to include, in the absence of or in addition to their individually tailored limitation findings, ones pulled from the regulation's tiered series of work capacities." *Borys*, 2025 WL 2814539, at *8; *see also Danielle R. v. Kijakazi*, No. 1:22-CV-1446, 2023 WL 6130588, at *8 (M.D. Pa. July 28, 2023) (concluding that the principle that the ALJ need not use particular language or adhere to a particular format in conducting the RFC analysis and need only provide a sufficient explanation to permit meaningful judicial review "has been extended to issues like this one, where an ALJ articulated an RFC assessment in terms of an

exertional category without discussing sitting, standing, or walking separately"), *report and recommendation adopted sub nom. Riebling v. Kijakazi*, No. 1:22-CV-01446, 2023 WL 6129498, at *1 (M.D. Pa. Sept. 19, 2023).

Here, as noted above, in making her RFC assessment, the ALJ considered Turner's testimony and assertions regarding her limitations, Turner's medical records, the reports of consultative examiners, and the opinions in the record. *Admin. Tr.* at 28–30. And the ALJ found persuasive the opinions of Dr. Baublitz-Brenenborg and Dr. Sasnauskas who opined that Turner is able to perform light work. *Admin. Tr.* at 29. Dr. Baublitz-Brenenborg and Dr. Sasnauskas each also opined that Turner can "[s]tand and/or walk (with normal breaks) for a total of: **About 6 hours in an 8 hour workday.**" *Admin. Tr.* at 71, 81, 93, 105 (bold in original). Those opinions are consistent with light work given that the "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5–6. Further, the ALJ explained why she found Drs. Baublitz-Brenenborg and Sasnauskas's opinions persuasive. *Id*. at 29–30. She also considered the opinion of Ms. Cywinski, who opined that Turner was more limited. *Id*. at 29. But the ALJ found Ms. Cywinski's opinion unpersuasive overall, and she explained her reasons for that finding. *Id*. And "since the opinion evidence which the ALJ found persuasive did not include any more extreme or specific sitting, standing, or walking

limitations than what is already included in the light work limitation, no more was needed here." *Good v. Bisignano*, No. 4:24-CV-1158, 2025 WL 2486014, at *14 (M.D. Pa. Aug. 28, 2025).[9]  In sum, the ALJ clearly articulated her reasoning in setting the RFC, and her RFC assessment is supported by substantial evidence.

Because the ALJ clearly articulated her reasoning in setting the RFC and her RFC assessment is supported by substantial evidence, remand is not warranted on the basis that the ALJ failed to explicitly set forth a function-by-function analysis of Turner's ability to stand and walk.  This is consistent with numerous cases in this district where judges have concluded that an ALJ's failure to explicitly set forth a function-by-function assessment of a claimant's ability to stand and walk in the RFC is not reversible error where the ALJ limited the claimant to light work and the RFC assessment is otherwise supported by substantial evidence. *See, e.g.*, *Angel Luis V. v. Bisignano*, No. 3:23-CV-00910, 2025 WL 2825613, at *4–5, 10 (M.D. Pa. Oct. 3, 2025) (vacating and remanding for other reasons, but rejecting the argument that the ALJ's RFC assessment was not supported by substantial evidence and warranted remand because the ALJ did not specifically conduct a

---

[9] Although the opinion evidence that the ALJ found persuasive was consistent with the definition of light work, the ALJ found Turner further limited by the need for a sit/stand option. *Admin. Tr.* at 23 (providing that Turner "should have the option to transfer from sitting to standing in intervals up to one hour, but [she] will not be off task when transferring").  As noted above, Turner's focus here is her standing and walking limitations, and see does not contend that ALJ erred by imposing a sit/stand option. *See supra* note 8.

function-by-function assessment of the claimant's ability to sit, stand, and walk where the ALJ found that the claimant was able to perform a limited range of light work and the ALJ explained why she found medical opinions that the claimant can stand and/or walk and for about six hours and sit for about six hours persuasive and she explained why she did not find a medical opinion with greater limitations persuasive); *Borys*, 2025 WL 2814539, at *7–9 (concluding that by limiting the claimant to light work, the ALJ found that the claimant "was, at a minimum, limited to walking off and on for approximately 6 hours of the workday"; by imposing further limitations, including a sit/stand option, the ALJ concluded that the claimant's ability to sit and stand was more limited than the definition of light work; and that ALJ's RFC was supported by substantial evidence and "sufficiently articulated to permit judicial review"); *Honey v. Bisignano*, No. 3:23-CV-1382, 2025 WL 2712426, at *8–9 (M.D. Pa. Sept. 23, 2025) (same); *Nelson v. Bisignano*, No. 4:24-CV-263, 2025 WL 2713743, at *12 (M.D. Pa. Sept. 23, 2025) ("The Light Work RFC Implicitly Addressed [the claimant]'s Limitations in Standing and Walking" (italics omitted)); *Bayarinas v. Bisignano*, No. 4:24-CV-1216, 2025 WL 2550865, at *10–12 (M.D. Pa. Sept. 3, 2025) (concluding that even though the ALJ did not include any specific standing or walking limitations in the RFC, the ALJ limited the claimant to light work, and "the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial

31

evidence"); *Good*, 2025 WL 2486014, at *13 ("The ALJ's RFC limiting [the claimant] to light work accounted for the standing, walking, and sitting limitations the ALJ found persuasive." (emphasis omitted)); *Marrero*, 2025 WL 2415753, at *6 (concluding—in a case where the ALJ found persuasive opinions that limited the claimant to standing and/or walking for about six hours in an eight-hour workday and where the ALJ determined that the claimant had the RFC to do a limited range of light work without explicitly setting forth a function-by-function assessment of the claimant's ability to stand and walk—that "the absence of a specific function-by-function assessment in this case does not require remand, where we have concluded that the ALJ's RFC determination was supported by substantial evidence"); *Danielle R.*, 2023 WL 6130588, at *8 (concluding that the ALJ adequately defined the claimant's ability to sit, stand, and walk in the RFC assessment by concluding that the claimant could do light work); *see also Navas v. Comm'r of Soc. Sec.*, 289 F. App'x 555, 558 (3d Cir. 2008) (rejecting the argument that the ALJ failed to define the claimant's sitting, standing, and walking limitations and concluding that "by finding that [the claimant] could perform light work, the ALJ implicitly found that she could work at a job that involves a good deal of walking or standing, or a job that involves sitting most of the time with some pushing and pulling of arm or leg controls" (internation quotation marks and citation omitted)).

Resisting the conclusion that there is substantial evidence supporting the ALJ's RFC assessment, Turner contends that three cases from this district— *Barbour v. Kijakazi*, No. 4:20-CV-0861, 2021 WL 4478332 (M.D. Pa. Sept. 30, 2021); *Mattox v. Kijakazi*, No. 3:22-CV-01341, 2023 WL 5943135, at *1 (M.D. Pa. Sept. 12, 2023); *Steinmetz v. Colvin*, No. 1:23-CV-2066, 2025 WL 36159 (M.D. Pa. Jan. 6, 2025)—"establish that an ALJ must include standing and walking limitations when they are supported by the record and that a mere limitation to 'light work' is insufficient." *Doc. 10* at 23.  The circumstances in those cases, however, are distinguishable from the circumstances in Turner's case.

In *Barbour*, the court recognized that "[a]n ALJ's failure to conduct a function-by-function assessment does not require remand where the ALJ's decision is otherwise supported by substantial evidence." 2021 WL 4478332, at *5.  But the court concluded that the ALJ's decision was not supported by substantial evidence because in addition to not conducting a function-by-function assessment of the claimant's ability to stand and walk, the ALJ's decision provided "little insight as to what the ALJ's rationale may have been" regarding the opinion evidence concerning the claimant's ability to stand and walk. *Id.*  More specifically, "the ALJ accorded 'significant' weight to an opinion that addressed the functions separately (Dr. Huitt's opinion), and 'some' weight that to an opinion addressed these functions together using the 'and/or' connector (Dr. Bermudez's opinion)[,]"

33

but "[d]espite giving more weight to Dr. Huitt's opinion, the ALJ's RFC assessment more closely resembles Dr. Bermudez's opinion." *Id.* And the ALJ did not provide an explanation for why that was the case. *Id.* The court in *Barbour* also observed that "there has been no development of the record as to whether the inability to stand for a full six hours, or the inability to walk for a full six hours, is vocationally significant to the performance of light work[,]" and "[t]his lack of development makes the VE testimony underlying the ALJ's conclusion unreliable." *Id.* at *6.

In the instant case, unlike in *Barbour*, there is no ambiguity regarding the ALJ's handling of the opinion evidence. Rather, the ALJ found persuasive the opinions of Dr. Baublitz-Brenenborg and Dr. Sasnauskas limiting Turner to standing and/or walking for about six hours, which is consistent with light work. The ALJ also rejected—and explained her reasons for rejecting—the opinion of Ms. Cywinski, who opined as to greater limitations than Drs. Baublitz-Brenenborg and Dr. Sasnauskas. Thus, the ALJ's RFC assessment in the instant case, unlike in *Barbour*, is sufficiently clear to allow for meaningful judicial review and is supported by substantial evidence.

In *Mattox,* in addition to not including walking and standing limitations in the RFC, the ALJ mischaracterized the opinion evidence in the record regarding such limitations. 2023 WL 5943135, at *7–8. The court concluded that "because

34

the ALJ failed to adequately explain [the] opinions, and which portions of [the] opinions he rejected, the final decision denying Mattox's claim is not supported by substantial evidence." *Id*. at \*8.  But in the instant case, unlike in *Mattox*, the ALJ did not mischaracterize the evidence, and she explained what opinions she found persuasive and not persuasive and why she found them so.  Thus, the ALJ's RFC assessment in the instant case, unlike in *Mattox*, is sufficiently clear to allow for meaningful judicial review and is supported by substantial evidence.

In *Steinmetz,* the ALJ found that the claimant had the RFC to perform medium work with some limitations. *Steinmetz*, 2025 WL 36159, at \*3.  And the ALJ found persuasive the opinion of a doctor who opined that the claimant could stand for one hour a time and five hours total in an eight-hour workday and walk for 20 minutes at a time and up to three hours in an eight-hour workday. *Id*. at \*8. But despite that finding, apart from acknowledging that the claimant averred that she has problems with both standing and walking, the ALJ did not discuss standing or walking in his opinion. *Id.*  And he did not include such limitations in the RFC assessment or in the hypotheticals to the VE. *Id*.  The court concluded that the ALJ's failure to either account for the limitations in the opinion he found persuasive or explain the reasons why he rejected those limitations frustrated judicial review. *Id*. at \*8–9.

35

In the instant case, unlike in *Steinmetz*, there is no ambiguity regarding the ALJ's handling the opinion evidence. Again, as already discussed, the ALJ found persuasive the opinions of Dr. Baublitz-Brenenborg and Dr. Sasnauskas limiting Turner to standing and/or walking for about six hours, which is consistent with light work. The ALJ also rejected—and explained her reasons for rejecting—the opinion of Ms. Cywinski, who opined as to greater limitations than Drs. Baublitz-Brenenborg and Sasnauskas. Thus, the ALJ's RFC assessment in the instant case, unlike in *Steinmetz*, is sufficiently clear to allow for meaningful judicial review and is supported by substantial evidence.

In sum, because the ALJ found that Turner could perform light work with additional limitations and she explained her reasons for that finding, the ALJ's RFC assessment is sufficiently clear to allow for meaningful judicial review and is supported by substantial evidence.

## VI. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge